(July 27, 2000)

■ In the Matter of WILLIAM J., a Person Alleged to be a Juvenile Delinquent, Respondent. [711 NYS2d 411] —Order, Family Court, New York County (Mary Bednar, J.), entered on or about February 26, 1999, which granted respondent's motion to suppress physical evidence and dismissed the petition, unanimously reversed, on the law and the facts, without costs or disbursements, the motion denied and the petition reinstated.

In this juvenile delinquency proceeding, the following facts were adduced at the suppression hearing. On January 22, 1999, Police Officers O'Neill and Sepulveda were assigned to anti-crime duty in high crime areas. In mid-afternoon, while on patrol in Manhattan with a third officer, in an unmarked car and in plainclothes, the officers observed two teenagers in front of 470 West 141st Street, a three-story residential building. One of the youths, who was wearing camouflage clothing, was "pushing on the front door" of the building while the other, respondent, five feet behind, remained on the sidewalk. When the door did not open, the two youths walked to the adjoining building, where the teenager dressed in camouflage again attempted to push the front door open. As before, respondent waited on the sidewalk. The door did not open.

Believing he was witnessing an attempted burglary because "the area ha[d] a lot of burglaries and robberies," O'Neill directed Sepulveda to stop the car so that they could question the youths. Displaying his shield around his neck, O'Neill exited the unmarked car and asked respondent, now walking in his direction, if he was with the person in camouflage clothing. Respondent said, "No, I'm not with him." Meanwhile, Sepulveda had approached the other youth and began to question him. O'Neill asked respondent to "hold on" while he went "to hear what [his] partner had to say after he questioned the other person." Respondent said, "Okay." According to O'Neill,

respondent, whom O'Neill intended to question further, "had every right to leave." Sepulveda told O'Neill that, according to the youth in camouflage clothing, the two were cousins. O'Neill then returned to respondent and asked him why he was lying; respondent did not answer. When O'Neill asked where he was coming from, respondent answered that he had come from his cousin's house at 127th Street and St. Nicholas Avenue, about 14 blocks away. Respondent did not know the address. Concerned for his safety, O'Neill asked respondent if he "ha[d] anything on [him] that he shouldn't have." Respondent answered, "[C]rack," and, in response to O'Neill's further inquiry, advised the officer that the crack was in his back pocket. O'Neill told respondent to take the crack out of his pocket, but Sepulveda intervened and removed a clear plastic bag containing what appeared to be crack cocaine from respondent's pocket. When the court reminded O'Neill that his question as to whether respondent had anything on him could have elicited a response "ranging from a weapon to anything else," O'Neill responded, "Well, I didn't expect to get the reply that he gave me."

Respondent testified that the officers, without questioning them first, checked the other youth's pockets and then his. He stated that while going through his pockets, one of the officers asked if he had anything he should not have and that he responded "no." The officers continued to search him and found the cocaine. He never told the officers he had cocaine on him.

In granting suppression, the Family Court, implicitly rejecting the officer's testimony, found that the circumstances justifying the officers' approach and questioning of respondent justified, at best, a request for information only. The court further found that O'Neill's testimony that he was concerned for his safety was not credible. That being so, the court held, O'Neill's question of respondent as to whether he had anything on him was not justified and constituted an impermissible common-law inquiry since the officer lacked a founded suspicion that criminal activity was afoot. When the prosecutor stated that the Presentment Agency would be unable to proceed without the suppressed evidence, the court dismissed the petition. We reverse.

Officers O'Neill and Sepulveda had an objective, credible reason to approach respondent and the other youth. In a high-crime area known for burglaries, they observed two persons, going from one apartment building to another, one pushing on the front door of the building while the other waited on the sidewalk at the bottom of the steps. Even if "consistent with

innocence, [this] was sufficient to provide the officers with 'a founded suspicion that criminal activity [was] afoot', justifying the officers' approach to request explanatory information." (*Matter of James R.*, 76 NY2d 825, 826.) As even respondent in his testimony confirmed, he and the other youth were "checking the doors" of the buildings on 141st Street when he first observed O'Neill's car turn onto 141st Street. The officers' initial approach and questioning of the two youths, certainly the most minimal of intrusions, was proper. Once it became apparent that respondent was giving false and evasive answers, O'Neill possessed a founded suspicion that criminal activity was afoot, triggering the common-law right of inquiry. And, in exercising that right of inquiry, a police officer's questions may become more pointed, as did O'Neill's. (*See, e.g., Matter of Robert C.*, 185 AD2d 313; *Matter of Camille H.*, 215 AD2d 143.) It was, of course, respondent's own answer to O'Neill's pointed, but justified, inquiry that led to the recovery of the bag of cocaine.

The Family Court rejected O'Neill's testimony that, in light of respondent's actions and evasions, he was concerned for his safety because if he truly believed he was in danger, he would have frisked respondent for weapons. Since the circumstances justified O'Neill's exercise of the common-law right of inquiry, the fact that he took the less intrusive step of asking respondent if he was in possession of anything "that he shouldn't have" should not serve to undermine his credibility on this point. Concur—Sullivan, P. J., Rosenberger, Nardelli, Ellerin and Wallach, JJ.