THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TITO RODRIGUEZ, Appellant. [853 NYS2d 346]—

Defendant argues that when the police stopped him in the

street and detained him for purposes of identification, they did so on the basis of pedigree information that other officers had obtained by means of an allegedly unlawful detention of defendant in a building lobby about half an hour earlier. He further argues that absent the pedigree information, the remaining basis for the street detention was a constitutionally insufficient description of himself. He therefore argues that the victim's showup identification and other fruits of the street detention should be suppressed as ultimate fruits of the allegedly illegal lobby encounter. However, while at the hearing defendant challenged the legality of the lobby encounter, he conceded that the second set of officers lawfully stopped him on the basis of his description as a robbery suspect, and never argued that his detention hinged on the pedigree information. Accordingly, his present arguments in this regard are unpreserved and we decline to review them in the interest of justice. As an alternative holding, we find there was nothing illegal about the police conduct in the lobby.

Defendant contends that the incident in the lobby of the victim's apartment building constituted a level-three seizure under *People v De Bour* (40 NY2d 210 [1976]) and its progeny. This argument is unavailing. Initially, the situation was a level one request for information. A radio run indicating a call for help from a particular building, plus the fact that defendant was leaving that building, gave the police the right to ask defendant where he was coming from. Defendant gave an answer that the officer immediately knew to be false, in that defendant said he was coming from apartment 4A when the listing of apartments in the vestibule indicated no such apartment, and this elevated the situation to a level-two common-law inquiry (*see e.g. Matter of William J.*, 274 AD2d 343, 345 [2000]). The fact that the officers simply stood their ground when defendant tried to sneak between them did not transform the situation into a level-three seizure (*see People v Grunwald*, 29 AD3d 33, 38-39 [2006], *lv denied* 6 NY3d 848 [2006]; *People v Cherry*, 30 AD3d 185, 185-186 [2006], *lv denied* 7 NY3d 811 [2006]). The officers properly asked defendant for identification, and as defendant handed over an identity card, the officers heard a woman screaming and ran up the stairs, allowing defendant to flee. Accordingly, the information on the identification card was lawfully obtained. Therefore, the street detention of defendant by the second set of officers was lawful, irrespective of whether or not it was based in part on that information.

The two police officers who had encountered defendant in the lobby drove the victim to the showup location. After the victim

identified defendant, one officer remarked that defendant was the same person whom the police had stopped at the victim's building, and the other officer agreed. Assuming, arguendo, that this constituted a showup identification by the police officers, it was not unduly suggestive (*see People v Wilburn*, 40 AD3d 508, 509 [2007], *lv denied* 9 NY3d 883 [2007]).

After being taken to the precinct and given *Miranda* warnings, defendant was interviewed by a detective for about ten minutes. When the detective started to inquire about an unrelated crime, defendant said he did not want to answer any more questions. This "desire to avoid certain areas of inquiry" was not "an unequivocal assertion of [defendant's] right to remain silent" (*People v Morton*, 231 AD2d 927, 928 [1996], *lv denied* 89 NY2d 944 [1997]). Therefore, there is no need to suppress any of defendant's subsequent statements. In any event, even if defendant invoked his right to silence, the confession that defendant made to a second detective, after a fresh set of *Miranda* warnings, about six hours later was sufficiently attenuated to be admissible.

About four hours later, defendant spoke to a third detective; that interview ended when defendant said he did not want to talk to that detective. Three hours after that, defendant was taken to the District Attorney's office and given yet another set of *Miranda* warnings, at which time he made a videotaped confession. Even if defendant's statement to the third detective constituted an invocation of his right to remain silent, there was sufficient attenuation to make the videotape admissible (*see e.g. People v Rodriguez*, 231 AD2d 477, 478 [1996], *lv denied* 89 NY2d 1099 [1997]).

Defendant's contention that his confession to the second detective was not voluntary because that detective used trickery is unpreserved, and we decline to review it in the interest of justice. As an alternative holding, we also reject it on the merits. Concur—Tom, J.P., Friedman, Nardelli, Catterson and Moskowitz, JJ.